kaw

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| WILLIAM O. REED, JR., MD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| PHILLIP ROY FINANCIAL ) | Case No. 05-2153-JAR |
| SERVICES, LLC and PHILLIP ) | |
| WASSERMAN, ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM AND ORDER**

The Court now considers plaintiff's Motion for Summary Judgment (Doc. 144) and defendant's Motion for Partial Summary Judgment Regarding Recovery of Future Rent (Doc. 142). Dr. Reed brings a breach of contract claim and Phillip Roy Financial Services, LLC ("PRFS") counterclaims that Dr. Reed breached the contract. Additionally, PRFS counterclaims that Dr. Reed fraudulently induced PRFS into signing the contract. Dr. Reed moves for summary judgment on his breach of contract claim and on PRFS's two counterclaims. The matter is fully briefed and the Court is now prepared to rule. For the reasons set forth below, plaintiff's motion for summary judgment is denied and defendant's motion for partial summary judgment is granted.

## BACKGROUND

The following facts are uncontroverted or viewed in the light most favorable to the nonmoving parties. This is an action for breach of contract brought by Doctor William Reed, Jr., against PRFS and Phillip Wasserman. Mark Jones, an agent of Jet Lease, contacted PRFS to advise Wasserman about a Cessna Citation ("plane") for lease. Jones solicited PRFS to enter

into the lease with Dr. Reed for the Cessna Citation and acted as broker in the negotiations.[1] The lease was arranged, and a template of the lease was provided to Dr. Reed's attorney. The parties entered into an agreement on December 24, 2004, whereby PRFS agreed to lease the plane for one year with the term ending November 30, 2005. The contract provided that PRFS would make monthly payments of $14,750.00 for a total of $177,000.00.

Federal Aviation Administration ("FAA") Regulations required the plane to be Reduced Vertical Separation Minimum ("RVSM") certified and Terrain Aviation Warning System ("TAWS") certified by March 29, 2005. RVSM was required so that the plane could be flown at varying altitudes according to federal regulations. Additionally, the plane was due for a phase V inspection in May 2005. During negotiations, Jones sent an e-mail to Dr. Reed's attorney noting that TAWS and RVSM were yet to be installed and would need to be installed by March 29, 2005. Dr. Reed's attorney responded that he would "like to see these disclosures affirmatively documented in the Lease Documents." Jones replied, "I'm not sure why but, okay." The final lease, however, did not contain the deadline for installation of the equipment, rather, it provided that the modifications would be accomplished during the lease period at the lessor's expense. PRFS was required by the terms of the lease to schedule the TAWS and RVSM installation at a cost not to exceed $22,000, to be paid by Dr. Reed. The agreement did not mention that the deadline for the installation was March 29, 2005. The installation never took place because January, February, and March were the busiest flying months for PRFS. Furthermore, PRFS believed that Dr. Reed was responsible for making arrangements and making the payments for the installations.

---

[1] Jones described his duty to lessee as simply advising whether the plane was scheduled for any major maintenance.

After signing the agreement, PRFS took possession of the plane. Shortly thereafter, Wasserman was advised by one of his pilots that the plane was not in airworthy condition because, among other things, CESCOM[2] air logs were missing. The records were ultimately reconstructed after some searching with companies that routinely inspect aircraft for airworthiness. Subsequently, additional mechanical problems arose, including a fuel leak, battery replacement, and an ignition problem that prevented the plane from starting. Because of the issues raised in February and March, PRFS did not pay the March rent. Sometime later in March, repairs were completed on the landing gear, battery, ignition, fuel gauges, and hoses. After the repairs were complete, PRFS flew the plane on March 30, 2005, in violation of FAA regulations requiring TAWS and RVSM certification.

On April 8, 2005, PRFS sent Dr. Reed a letter explaining that it viewed the agreement as fatally breached because the plane came without TAWS certification, it was down numerous times on account of maintenance, most of which was not performed because Dr. Reed did not pay the fees, and it has been unable to use the plane since March because it did not have a TAWS. After regaining possession of the plane, Dr. Reed had the plane flown to Kansas City Aviation Center to undergo the TAWS installation, RVSM installation, and the phase V inspection, all of which took over two months to complete. Dr. Reed then entered into a sales agreement with Southport Aviation, Inc., for $1,640,000. The deal closed on November 7, 2005.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[2]CESCOM is an electronic, central repository maintained by Cessna, detailing the repairs and maintenance performed on a plane. Records were missing from the last maintenance check done on December 24, 2004.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."³ A fact is only material under this standard if a dispute over it would affect the outcome of the suit.⁴ An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."⁵ The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."⁶

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.⁷ "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."⁸ The burden may be met by showing that there is no evidence to support the nonmoving party's case.⁹ If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."¹⁰ If the moving party bears the burden of proof at trial, "it must point to evidence in the record that supports its version of all material facts and demonstrate an absence of a genuine issue of material facts."¹¹ "If the

---

³Fed. R. Civ. P. 56(c).

⁴*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

⁵*Id.*

⁶*Id.* at 251–52.

⁷*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

⁸*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

⁹*Id.*

¹⁰*Id.*

¹¹*Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting).

moving party does not meet this burden, the court must deny summary judgment even if the nonmoving party does not produce any opposing evidence."[12]  If the moving party does meet its burden, the nonmoving party must offer more than mere allegations and denials to create a genuine issue of material fact.[13]  When examining the underlying facts of the case, the Court is cognizant that it may not make credibility determinations or weigh the evidence.[14]  Furthermore, the record is to be viewed in the light most favorable to the nonmoving party.[15]

## BREACH OF CONTRACT CLAIMS

Dr. Reed claims that PRFS breached the contract by failing to make the monthly rent payments, by failing to make all the payments toward the engine reserve and airframe reserve, and by failing to log the flight hours of the plane.  Dr. Reed also claims that summary judgment is proper on PRFS's counterclaim for breach of contract.  To prove a breach of contract, Dr. Reed must proffer evidence that (1) there was a contract between the parties, (2) there was sufficient consideration to support the contract, (3) he was willing to comply with the terms or complied with the terms of the contract, (4) the defendants breached the contract, and (5) he sustained damages.[16]  PRFS counters by asserting that Dr. Reed breached the contract by failing to install the TAWS and RVSM systems by the deadline, by failing to provide the missing CESCOM records, and by failing to install TAWS prior to turning over the plane to PRFS.

Summary judgment on Dr. Reed's breach of contract claim is not appropriate, as he

---

[12]*Id.*

[13]*Id.*

[14]*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[15]*Harrison v. Wahatoyas, LLC*, 253 F.3d 552, 557 (10th Cir. 2001).

[16]*City of Andover v. Southwestern Bell Tel., L.P.*, 153 P.3d 561, 565 (Kan. Ct. App. 2007).

cannot affirmatively prove that he complied with the terms of the agreement.  There is a issue of material fact as to whether Dr. Reed failed to comply with the terms of the agreement when he turned over the plane to PRFS.  The agreement provides that the plane at delivery was in compliance with FAA regulations requiring CESCOM records.  But it is undisputed that the CESCOM air logs were missing after PRFS took possession of the plane.  Furthermore, there is an issue of material fact as to whether PRFS's failure to pay the March rent and airframe reserves constituted a breach given the mechanical problems with the plane.  PRFS offers evidence that the plane underwent many repairs after it was delivered, which rendered it unairworthy.  As such, whether PRFS breached the agreement and whether Dr. Reed complied with the agreement are genuine issues of material fact.

In addition, PRFS argues that the agreement is ambiguous as to: (1) which party is responsible for engine maintenance expenses and phase V inspection; (2) how monthly lease payments are applied to engine reserves and airframe; (3) when TAWS was to be installed under the Aircraft Lease Acceptance Certificate; (4) what happens if TAWS installation cost more than $22,000; and, (5) whether proration of the rent for RVSM certification included downtime for RVSM modifications and installation as explained in the Aircraft Lease Acceptance Certificate.  Thus, according to PRFS, parol evidence should be admitted to explain the terms of the agreement and to determine whether PRFS or Dr. Reed breached the agreement.

The agreement between Dr. Reed and PRFS is ambiguous so as to permit parol evidence to explain the terms to determine which party breached the contract.  Generally, parol evidence is not admissible to vary the terms of a complete and unambiguous agreement.[17]  Whether an

---

[17]*Simon v. Nat'l Farmers Org., Inc.*, 829 P.2d 884, 887-88 (Kan. 1992).

agreement is ambiguous is a matter of law.[18]  In construing a contract, "'the intent of the parties is the primary question.'"[19]  Where the language in the agreement is clear and unambiguous, there is no room for a court to disturb the four corners of the agreement, and the agreement will be determined to be the entirety of the parties' intent.[20]  On the other hand, where a reasonable interpretation of the terms expressed by the parties creates doubt or conflicting meanings, then the agreement is ambiguous.[21]  "If the contract is ambiguous, 'the intention of the parties is not ascertained by resort to the literal interpretation, but by considering all language employed, the circumstances existing when the agreement was made, the object sought to be attained, and other circumstances'" which aid in determining the intention of the parties.[22]  Thus, if terms or provisions in an agreement are ambiguous, parol evidence is permitted to explain their meaning.[23]  Once a court determines that a contract is ambiguous, interpretation becomes a question of fact.[24]

Looking to the agreement between the parties, the Court finds that the agreement is ambiguous as to a few material provisions.  Section 3.3 provides that "[d]uring the Term of this Lease, Lessee shall pay Lessor the amount of $220.00 per flight hour (the 'Engine Reserves'). . . .  Provided Lessee is not in default of this Lease, amounts collected . . . may be made available to

---

[18]*Id.* at 888.

[19]*Slawson Exploration Co. v. Vintage Petro., Inc.*, 78 F.3d 1479, 1481 (10th Cir. 1996) (quoting *Akandas, Inc. v. Klippel*, 827 P.2d 37, 44 (Kan. 1992)) .

[20]*Mobile Acres, Inc. v. Kurata*, 508 P.2d 889, 894 (Kan. 1973).

[21]*Simon*, 829 P.2d at 888.

[22]*Slawson Exploration Co.,* 78 F.3d at 1481 (quoting *Akandas, Inc*., 827 P.2d at 51).

[23]*Seute v. Am. Oil Co.*, 594 P.2d 156, 158 (Kan. 1979).

[24]*Slawson Exploration Co.,* 78 F.3d at 1482.

7

Lessee for payment of scheduled or unscheduled Aircraft *engine maintenance*."[25]  Section 8.1 of the lease provides:

> Lessee will be in operational control of the Aircraft at all times hereunder and *shall be responsible for its operation, possession, use, and maintenance. . . .  All inspections, repairs, modifications, FAA directives, mandatory service bulletins and overhaul work to be made or accomplished shall be performed by Lessee at Lessee's expense by persons licensed to perform such work and shall be in accordance with the standards required by the FAA and other governmental regulations. . . .  Should such work be other than minor in nature*, Lessor shall have the right to approve the repair agency prior to commencement of such work.[26]

Section 8.4 provides that *"Lessor agrees to be responsible for all maintenance expenses, scheduled and unscheduled, including overhauls or hot section inspection of said Aircraft engines.*  Lessor shall have the right to approve any engine repair facility, and enforce any requirements of the current JSSI contract for engine maintenance."[27]  Section 3.4 states that "Lessee shall pay Lessor the amount of $220.00 per flight hour (the 'Engine Reserves'). . . . [A]mounts collected by Lessor for Engine Reserves *may be made available to Lessee for payment of scheduled or unscheduled Aircraft engine maintenance*."[28]

      The language of the agreement is ambiguous about which party is responsible for what type of work.  The provisions literally contradict by requiring both lessor and lessee to be responsible for overhaul and maintenance.  Indeed, section 3.3 explains that Lessee may use engine reserve funds to pay for engine maintenance, but section 8.4 explains that Lessor is

---

[25](Emphasis added).

[26](Emphasis added).

[27](Emphasis added).

[28](Emphasis added).

responsible for engine maintenance. Moreover, Dr. Reed admitted that this section of the agreement was ambiguous. When asked about the meaning of "minor" work as compared to "major" work on the plane, Dr. Reed responded that he did not know if the parties "clearly defined" the terms.

Additionally, the agreement does not mention the TAWS and RVSM systems. The Aircraft Lease Acceptance Certificate does account for the TAWS and RVSM systems, but that section does not provide what is to occur if the parties exceed the $22,000 maximum stated in the agreement for the installation of TAWS and RVSM systems. Section 3 of the Aircraft Lease Acceptance Certificate merely recites that "RVSM and TAWS modifications and installations [are] to be performed at Lessor's expense . . . at a cost pre-approved by Lessor not to exceed $22,000.00." Because the agreement is ambiguous, parol evidence should be considered to explain the terms of the contract so that a jury can determine the intent of the parties, and also to decide whether PRFS breached the agreement. As such, Dr. Reed cannot carry his burden on summary judgment because there is a genuine issue of material fact about whether he breached the contract.

### MISREPRESENTATION–FRAUDULENT INDUCEMENT

PRFS asserts as a counterclaim that Dr. Reed fraudulently induced it into signing the lease. Dr. Reed has also moved for summary judgment on this claim. To carry his burden here, Dr. Reed must alert the court to an absence of a genuine issue of material fact on an element of PRFS's claim. If he meets that burden, it is then up to PRFS to bring forth specific facts showing a genuine issue of material fact for trial.

The Court notes that the "existence of fraud is normally a question of fact."[29] Additionally, courts "'should be cautious in granting a motion for summary judgment when the resolution of a dispositive issue necessitates a determination of the state of mind of one or both parties.'"[30]  Furthermore, "[e]ven though fraud must be proved by clear and convincing evidence, a party resisting a motion for summary judgment in an action for fraud need not present clear and convincing evidence of fraud to oppose the motion."[31]  To establish fraud by silence, PRFS must show:

> (1) that defendant [in this case Dr. Reed] had knowledge of material facts which plaintiff [PRFS] did not have and which plaintiff could not have discovered by the exercise of reasonable diligence; (2) that defendant was under an obligation to communicate the material facts to plaintiff; (3) that defendant intentionally failed to communicate to plaintiff the material facts; (4) that plaintiff justifiably relied on defendant to communicate the material facts to plaintiff; and (5) that plaintiff sustained damages as a result of defendant's failure to communicate the material facts to plaintiff.[32]

Dr. Reed appears to argue that PRFS could have discovered the material facts at issue with reasonable diligence, and that Dr. Reed had no duty to disclose the information.[33]

### *Discovery Through Reasonable Diligence*

Dr. Reed contends that summary judgment is proper because PRFS could have discovered the TAWS and RVSM deadlines and time periods associated with the installation

---

[29]*Brennan v. Kunzle*, 154 P.3d 1094, 1104 (Kan. Ct. App. 2007).

[30]*Id.* (quoting *Ruebke v. Globe Comm. Corp.*, 738 P.2d 1246, 1254 (Kan. 1987)).

[31]*Id.* (quoting *Dugan v. First Nat'l Bank in Wichita*, 606 P.2d 1009, 1014 (Kan. 1980)).

[32]*McLellan v. Raines*, 140 P.3d 1034, 1040 (Kan. Ct. App. 2006) (quoting *Miller v. Sloan, Listrom, Eisenbarth, Sloan and Glassman*, 978 P.2d 922, 932 (Kan. 1999)).

[33]Plaintiff's assertions are quite conclusory, and in some instances, he simply states a proposition with no facts to support it.

10

process through reasonable diligence.  Dr. Reed provides testimony that he told Casey, PRFS's pilot, that the TAWS and RVSM systems had to be scheduled for installation.  Jones also testified that Casey was aware of the TAWS requirement and the period of time associated with the installation.  In whole, Dr. Reed claims that the information provided in the Aircraft Lease and Acceptance Certificate, along with the information provided to PRFS's pilot and the federal regulations pertaining to the installation deadlines, gave PRFS ample information for it to be on notice that it needed to investigate the regulations pertaining to the certificates.

However, at the very least there is a material issue of fact as to whether Wasserman and PRFS acted reasonably in determining the deadline for installation.[34]  Wasserman testified that he was not informed of the deadline and if he was, he would not have entered the agreement.  He further testified that his pilot at the time, Casey, did not tell him that TAWS and RVSM needed to be installed by the end of March.  As such, there is an issue of material fact as to whether PRFS acted reasonably in seeking information about the TAWS and RVSM deadline and installation downtime.

### *Duty to Disclose*

A duty to disclose generally arises where the parties are in a relationship where the suppression or concealment of some fact is alleged.[35]  Determining whether there was a duty to disclose is dependent on the facts and circumstances of the case.[36]  In Kansas, courts typically recognize that there is a duty to disclose where "there is a disparity in bargaining power or of expertise between the two contracting parties; or . . . the parties are in a fiduciary relationship to

---

[34]*See Great Plains Christian Radio, Inc. v. Cent. Tower, Inc.*, 399 F. Supp. 2d 1185, 1194 (D. Kan. 2005).

[35]*Id.* at 1195 (citing *DuShane v. Union Nat'l Bank*, 576 P.2d 674, 674 (Kan. 1978)).

[36]*Id.*

one another."[37]

In this case, PRFS claims that Dr. Reed had a duty to disclose the TAWS and RVSM March 29, 2005 deadline because Dr. Reed had superior knowledge. Dr. Reed, however, contends that the Lease Agreement and Aircraft Acceptance Certificate detailed the information regarding the TAWS and RVSM installation. Even more, Casey, as a pilot, was obligated to know about the deadlines and regulations associated with aviation.

A disparity in bargaining power exists if one party "knows that the [other party] is about to enter into the transaction under a mistake as to such facts, and that the other, because of the relationship between them, the customs in the trade, or other circumstances, would reasonably expect a disclosure of such facts."[38] This duty to disclose has been debated frequently. Though some courts have found that unequal access to information is enough to present a duty to disclose, the more prudent rule would require superior knowledge as well as some combination of bargaining disparity or expertise in the relationship.[39]

Here, PRFS offers evidence that Dr. Reed intended to make certain disclosures, but for whatever reason they were not placed in the agreement. PRFS points to an e-mail sent by Dr. Reed to Jones detailing the necessity of a disclosure provision. Subsequently, Dr. Reed's attorney drafted a provision detailing the March 29, 2005 deadline for the installation of TAWS and RVSM systems, but never included the provision in the agreement. There is also evidence that Dr. Reed knew of the downtime for scheduling the installations and the inspections but did

---

[37]*Id.* (citing *DuShane*, 576 P.2d at 678-79).

[38]*Id.*

[39]*Id.* (citing *Meschke v. Orthalliance, Inc.*, No. 01-1365-JTM, 2002 WL 1398635, at *2 (D. Kan. June 24, 2002)).

not reveal that information to PRFS. In his deposition, Dr. Reed acknowledged that he had an obligation to disclose certain information pertaining to the time period it would take to complete the installations and inspection. Thus, PRFS has come forth with evidence that Dr. Reed had superior knowledge of federal regulations as he has been the operator of planes for many years. Accordingly, there is an issue of material fact as to whether Dr. Reed had a duty to disclose.

### RECOVERY OF FUTURE RENT

PRFS filed a motion for summary judgment on Dr. Reed's damages, contending that because Dr. Reed repossessed and sold the plane, he is not entitled to the full rent for the remaining rental period, but the damages as determined by K.S.A. § 84-2a-528(1). PRFS relies on a web of statutes to come to its conclusion. K.S.A. § 84-2a-523(1) provides: "If a lessee . . . repudiates . . . , the lessee is in default under the lease contract and the lessor may . . . dispose of the goods and recover damages" as directed by K.S.A. § 84-2a-527. Under § 84-2a-527(1) and (3), after a default by lessee, a lessor may dispose of goods by sale and recover according to K.S.A. § 84-2a-528. Section 84-2a-528(1) states:

> If a lessor elects to . . . dispose of the goods and the disposition is by . . . sale . . . , the lessor may recover from the lessee as damages for default of the type described in K.S.A. 84-2a-523(1) . . . (a) accrued and unpaid rent as of the date of default if the lessee has never taken possession of the goods . . . , or (b) *the present value as of the date determined under clause (a) of total rent for the then remaining lease term of the original lease agreement minus the present value as of the same date of the market rent at the place where the goods are located computed for the same lease term*, and (c) any incidental damages allowed under K.S.A. 84-20-530, less expenses saved in consequence of lessee's default.[40]

PRFS claims that this calculation yields the correct amount of damages that Dr. Reed is entitled

---

[40](Emphasis added).

to recover. The Court finds that PRFS's view is correct.

The confusion arises because the agreement mentions what is to occur if the lessor repossesses the plane and leases it, but it does not mention what occurs if the plane is repossessed and sold. Dr. Reed claims that the agreement speaks to the issue, but even if the agreement does not account for the sale of the plane, the remedy PRFS finds applicable is inadequate.[41] First, as PRFS correctly notes, Dr. Reed has provided no evidence to suggest that the remedy provided under § 84-2a-528(1) is inadequate. Dr. Reed simply makes a conclusory allegation that the remedy is inadequate, which is not enough at the summary judgment stage.[42] Second, the agreement does not mention what is to occur, and considering the ambiguities that lie within this agreement, the Court cannot read any provision to convey more than what it states. Simply, because this agreement does not mention what occurs upon repossession and sale, the Code applies, and Dr. Reed is entitled to damages according to the Code provisions.[43]

**IT IS THEREFORE ORDERED BY THE COURT THAT** Dr. Reed's Motion for Summary Judgment (Doc. 144) is **DENIED.**

**IT IS FURTHER ORDERED THAT** defendant's Motion for Partial Summary Judgment (Doc. 142) is **GRANTED**.

**IT IS SO ORDERED.**

Dated this  27th  day of November 2007

---

[41] K.S.A. § 84-2a-528(2). This section provides another calculation for damages if § 84-2a-528(1) is inadequate.

[42] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.* v. Catrett, 477 U.S. 317, 325 (1986)).

[43] K.S.A. § 84-2a-527(3) mt. 4 (explaining that "[u]nlike Article 2, it is clear that, under Article 2A, a lessor that properly disposes of goods is precluded from recovering market rent damages.").

 S/ Julie A. Robinson
**Julie A. Robinson**
**United States District Judge**

*Willaim O. Reed, Jr. v. Phillip Roy Financial Services, LLC & Phillip Wasserman*, 05-2153-JAR, Memorandum Order and Opinion