kaw

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

WILLIAM O. REED, JR., MD,   )
   )
               Plaintiff,   )
   )
   vs.   )
   )
PHILLIP ROY FINANCIAL   )     Case No. 05-2153-JAR
SERVICES, LLC and PHILLIP   )
WASSERMAN,   )
              Defendants.   )
_____)

## MEMORANDUM AND ORDER

The Court now considers plaintiff William O. Reed, Jr., M.D.'s Motion to Exclude

Defendant's Expert Witness Testimony (Doc. 139).  For the reasons set forth below, plaintiff's

motion is granted in part and denied in part.

**Background**

The parties entered into an airplane lease agreement on December 24, 2004, whereby

defendant Phillip Roy Financial Services ("PRFS") and Phillip Wasserman agreed to make

monthly payments in the amount of $14,750.00.  Subsequently, plaintiff Reed brought an action

against lessees for breach of contract, claiming that PRFS breached the agreement by failing to

pay the monthly rent and by failing to make the payments toward the airplane engine and

airframe reserves.  PRFS counterclaims that Reed breached the agreement by providing a plane

that was not airworthy because it came without the necessary Terrain Aviation Warning System

("TAWS"), Reduced Vertical Separation Minimum ("RVSM"), and was down on a number of

occasions due to repairs.  Alternatively, PRFS claims that the agreement is ambiguous and parole

evidence is necessary to determine which party breached the agreement.  In addition, PRFS

claims that Reed fraudulently induced it into the agreement.

**Expert Witness**

PRFS's expert, Lloyd W. Curtis ("Curtis"), is an aviation consultant.  Curtis graduated from the University of Minnesota in 1959 with a degree in Aeronautical Engineering.  His education centered on aircraft structural design, engine and aircraft maintenance, and aerodynamics and laboratory testing.  After college, Curtis spent a number of years in the United States Air Force as an Aircraft Maintenance Officer.  Subsequently, Curtis obtained employment with Cessna Aircraft Company in 1966.  For over thirty years, Curtis worked as either an Advanced Design Engineer, Engineering Project Supervisor for various Cessna models, Citation Field Service Supervisor, or Director of Product Support in the marketing department.  Curtis's experience includes piloting seventy different aircraft, training and pilot check-out, and ratings in Single and Multi-Engine Commercial airplanes, Cessna Citation, and Airline Transport. Curtis retired in 1997 and began his own consulting company, where his clients include Cessna Aircraft Company, VisionAire, and a number of other companies.  Curtis intends to opine on three questions posed to him by PRFS.  Those questions are:

> (1) whether the lease contract clearly defined which party was
> responsible for scheduling inspections, maintenance, and new
> equipment installations, and how payment for this was to be
> transacted; (2) whether the Lessee was informed, or warned, of the
> projected "out-of-service downtime" during the period of the lease,
> that would be necessary to accomplish the scheduled Phase V
> inspection coming due in June of 2005, and the TAWS and RVSM
> installation work spoken to in the Lease Agreement; and, (3)
> whether the aircraft discrepancies discovered and corrected during
> the subsequent Phase V inspection conducted in the fall of 2005,
> could have been caused by improper operation on the part of the

Lessee during the period of January through March of 2005.[1]

## Discussion

This Court has broad discretion in the determining the admissibility of expert testimony.[2] Under Federal Rule of Evidence 702, an expert may testify by opinion or otherwise where he qualifies as an "expert by knowledge, skill, experience, training, or education, and his specialized knowledge will assist the trier of fact to understand the evidence or to determine an issue of fact."[3]  To determine the admissibility of an expert's opinion, the Court must perform a two-step analysis.  "First, the Court must determine whether the expert is qualified by 'knowledge, skill, experience, training, or education' to render an opinion."[4]  Next, the Court must determine whether the expert's opinion is reliable under the principles set forth in *Daubert v. Merrell Dow Phars., Inc.,*[5] and *Kumho Tire Co. v. Carmichael.*[6]  It is a basic tenet that experts may not render opinions on issues of law.[7]

Beginning the analysis with the first question posed to Curtis by PRFS, it is quite clear that PRFS seeks to have Curtis opine on an issue of law.  Though Reed argues that Curtis is not qualified to state an opinion on the issue because it is one of contract interpretation, the Court

---

[1]Doc. 139-2.

[2]*Wilson v. Muckala*, 303 F.3d 1207, 1219 (10th Cir. 2002).

[3]*Mehus v. Emporia State Univ.*, 222 F.R.D. 455, 457 (10th Cir. 2004) (quoting Fed. R. Evid. 702).

[4]*Id.* at 458 (citation omitted).

[5]509 U.S. 579 (1993).

[6]526 U.S. 137 (1999).

[7]*Specht v. Jensen*, 853 F.2d 805, 807 (10 Cir. 1988); *see also Casper v. SMG*, 389 F. Supp. 2d 618, 622 (D. N.J. 2005) (explaining that "every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law.").

finds that Curtis may not opine on the issue because it is a question of law.  The first question asks Curtis to define the parameters of the agreement.  PRFS hopes to admit Curtis's opinion to show that the agreement is ambiguous; however, whether an agreement is ambiguous is a question of law.[8]  In his opinion Curtis explains that the "wording in the lease agreement on the subject of 'who pays' [the scheduling inspections, maintenance, and new equipment installations] is ambiguous."  In his opinion, "there was no clear . . . authority [delineating which party was responsible] for scheduling and payment of maintenance actions." As such, Curtis's opinion on the first question is inadmissible, as Curtis opines on an issue to be determined by the Court.[9]

On questions two and three, Reed makes the same claim—that Curtis is not qualified to state an opinion, as the questions posed are on issues of contract interpretation.  Reed claims that Curtis's extensive knowledge is in the area of aircraft maintenance and design, not in airplane lease agreements.  Therefore, any opinion offered by Curtis on the interpretation of the lease should not be admitted.  PRFS counters that Curtis is qualified, as he has negotiated and reviewed aircraft leases while employed with Cessna as the Director of Product Support.  To qualify as an expert, Curtis must possess the "knowledge, skill, experience, training, or education in a particular field" so that his opinion rests on a substantial foundation and would assist the trier of fact.[10]

---

[8]*Carland v. Metro. Life Ins. Co.*, 935 F.2d 1114, 1120 (10th Cir. 1991); *Simon v. Nat'l Farmers Org., Inc.*, 829 P.2d 884, 888 (Kan. 1992).

[9]The Court notes that it found that the agreement was ambiguous in its order of November 27, 2007 (Doc. 156).

[10]*Sprint Comm. Co., v. Vanage Holdings Corp.*, 500 F. Supp. 2d 1290, 1345 (D. Kan. 2007) (citation omitted).

Question number two requests that Curtis opine as to whether PRFS was aware or could have been made aware from the agreement that there would be considerable downtime associated with the installations of the TAWS, RVSM, and for the completion of the Phase V inspection.  In Curtis's opinion, "at the time of the negotiations, the Lease Agreement terms and conditions did not address the extensive periods of time that would cause the airplane to be out of service for the TAWS, RVSM, and Phase V inspection . . . ."  In reaching his conclusion, Curtis looked at the lease agreement and deduced that PRFS was not warned by the lease of the consequences of completing the installations and inspection.  Thus, in a sense, Curtis interpreted the lease agreement.  Reed contends that Curtis is not qualified to make such an interpretation because his expertise is not in the area of aircraft lease interpretation.  The Court agrees to the extent that Curtis interprets the agreement in his opinion.

Throughout his deposition testimony Curtis forms opinions based on his experience as an employee of Cessna Aircraft company.  Curtis explains that he has negotiated leases for Cessna and customers, but he does not detail to what capacity he was involved.  Moreover, according to his resume, his experience is within the maintenance and upkeep of aircrafts.  He is intimately familiar with airplane parts, maintenance, and functioning.  Nothing in his resume or experience shows that Curtis is qualified to speak on aircraft lease agreements.  Indeed, most of Curtis's responses in his deposition pertain to the inspections and the installation to be done on the aircraft.  In reading the lease, Curtis was familiar with the downtime and expense for the installations and the inspections.  As such, Curtis may form an opinion about the time associated with these installations and inspections, but he may not interpret portions of the agreement as he

is not qualified.[11]  Therefore, to the extent Curtis forms opinions about whether PRFS was warned, his testimony is not admissible.  As for his opinions about the downtime associated with each type of inspection and installation, those opinions will be admitted.

Question three poses a different question more in line with Curtis's experience.  Question three asks whether the mechanical and machinery failure discovered during the Phase V inspection could have been caused by the lessee's improper operation of the plane.  Reed again contends that Curtis is opining on issues outside of his expertise.  Here, however, Curtis opines that the Phase V inspection would have revealed issues that were not previously known through the Phase IV inspection.  Curtis concludes that any problems discovered during the Phase V inspection were from normal wear and tear.  He asserts that many of the problems may have been latent and only discovered because of the more detailed inspection.  In his opinion, there were no problems tending to show that the aircraft was operated improperly during January through March.  These are the types of conclusions expected of an aircraft design engineer.  Indeed, Reed admits that Curtis's qualifications reveal that he is an expert in "maintenance and mechanics of Cessna aircrafts."  As such, Curtis's opinions on question three will be admitted as that evidence is helpful to the trier of fact and Curtis is an expert in the field.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Plaintiff's Motion to Exclude Defendant's Expert Testimony is **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

Dated this __7th__ day of December 2007.

---

[11]*See Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991) (explaining that an expert must "stay within the reasonable confines of his subject area . . . .").

 S/ Julie A. Robinson
**Julie A. Robinson**
**United States District Judge**